IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| MELISSA C. PARISI and MICHAEL C. PARISI, III, wife and husband, | ) ) ) ) ) ) ) ) ) ) ) ) ) | CIVIL ACTION NO. 3:16-179 |
|---|---|---|
| Plaintiffs, | | JUDGE KIM R. GIBSON |
| v. | | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | | |
| Defendant. | | |

## MEMORANDUM OPINION

I.  Introduction

Before this Court is Plaintiffs' Motion to Compel Discovery. (ECF No. 20.) The issues have been fully briefed (*see* ECF Nos. 20, 21), and the Motion is ripe for disposition. For the reasons stated below, Plaintiffs' Motion will be **GRANTED in part, DENIED in part, and DEFERRED in part.**

II.  Jurisdiction

The Court has subject matter jurisdiction over the instant action pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391.

III.  Background

Plaintiffs initiated this diversity action by filing a Complaint on August 3, 2016. (ECF No 1.) Plaintiffs filed an Amended Complaint on October 17, 2016. (ECF No. 8.) The Amended Complaint alleges that Defendant breached its contract with Plaintiffs,

committed unfair trade practices, and acted in bad faith in how it handled Plaintiffs' claim for underinsured motorist benefits. (*See Id.* at 10-15.)

On November 4, 2016, this Court entered an Initial Scheduling Order which set various discovery deadlines (ECF No. 16), and subsequently granted the parties' first Joint Motion for Extension of Time to Complete Discovery. (ECF No. 19.) On April 27, 2017, Plaintiffs filed the Motion to Compel Discovery now pending before this Court.

IV.　**Applicable Law**

Federal Rule of Civil Procedure 26(b)(1) defines the scope of discovery as "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." This scope formerly included matters that were "reasonably calculated" to lead to the discovery of relevant evidence, but Rule 26 as amended no longer includes this language. A matter is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and ... the fact is of consequence in determining the action." *See* Fed. R. Evid. 401.

Rule 37 provides the mechanism to compel discovery from a person or party who refuses to comply with a discovery request. The party moving to compel discovery bears the initial burden of proving the relevance of the material requested. *See Morrison v. Phila. Hous. Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001) (citations omitted). If the movant meets this initial burden, then the burden shifts to the person resisting discovery to establish that discovery of the material requested is inappropriate. *Momah v. Albert Einstein Med. Ctr.*, 164 F.R.D. 412, 417 (E.D. Pa. 1996) (citation omitted). The person resisting discovery must explain with specificity why discovery is inappropriate; the boilerplate litany that

the discovery sought is overly broad, burdensome, oppressive, vague, or irrelevant is insufficient. *See Josephs v. Harris Corp.*, 677 F.2d 985, 991-92 (3d Cir. 1982).

If the party resisting discovery claims the right to do so on the basis of privilege, that party has the burden of proving that a privilege applies. *See Conoco, Inc. v. U.S. Dep't of Justice*, 687 F.2d 724, 730 (3d Cir. 1982). The instant discovery dispute concerns the attorney-client privilege and the attorney work-product privilege, also known as the "work-product doctrine."

The attorney-client privilege "protects from disclosure confidential communications made between attorneys and clients for the purpose of obtaining or providing legal assistance to the client." *In re Grand Jury Subpoena*, 745 F.3d 681, 687 (3d Cir. 2014) (citation omitted). The purpose of the attorney-client privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

Closely related to the attorney-client privilege is the work-product doctrine, which "is designed to protect material prepared by an attorney acting for his client in anticipation of litigation." *United States v. Rockwell Int'l*, 897 F.2d 1255, 1265 (3d Cir. 1990) (citation omitted). "The underlying purpose of the work-product doctrine is to shield the mental processes of an attorney, providing a privileged area within which he can analyze and prepare his client's case. The doctrine promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients." *Barrick v. Holy Spirit Hosp. of the Sisters of Christian Charity*, 2011 PA Super 251, 32

3

A.3d 800, 812 (2011), *aff'd sub nom. Barrick v. Holy Spirit Hosp. of Sisters of Christian Charity*, 625 Pa. 301, 91 A.3d 680 (2014) (internal citations omitted.)

V. **Analysis**

Plaintiffs urge this Court to take various actions to remedy the discovery dispute. Plaintiffs' requests fall into three categories.

First, Plaintiffs ask this Court to dismiss Defendant's "General Objections" found in Part I of its Answers and Objections to Plaintiffs' Interrogatories (*see* ECF No. 20-1 at 1-3) and in Part I of its Responses and Objections to Plaintiffs' Request for Production of Documents. (ECF No. 20-2 at 1-3.) In response, Defendant avers that Defendant's "General Objections" should not be stricken because those sections "simply confirm the privileges and protections which are available under Pennsylvania law." (ECF No. 21 at 2.)

Next, Plaintiffs ask this Court to compel Defendant to supplement its response to Plaintiffs' request for a full copy of Ms. Parisi's claims file. (*See* ECF No. 20 at 5.) Specifically, Plaintiffs seeks documents that Defendant has labeled in the claims file as "FREE FORM - ATTORNEY."[1] (*See* ECF No. 20 at 6-8.) Plaintiffs further seek "unredacted log entries by claims personnel for the period after January 28, 2016," including those entries concerning communications with Attorney Thomas McDonnell. (*Id.* at 8-9.) In

---

[1] Plaintiffs also ask this Court to "order the [D]efendant to produce an explanation of the meaning of 'FREE FORM – ATTORNEY.'" (ECF No. 20 at 8.) However, Defendant clarified the meaning of the notation "FREE FORM – ATTORNEY" in its Brief in Opposition; the notation indicates that "a letter was drafted by the assigned claim professional (not system generated) and sent to an attorney." (ECF No. 21 at 3.) Thus, the remaining issue is not the meaning of the notation "FREE FORM – ATTORNEY" but rather the fact that after Plaintiffs requested Ms. Parisi's claims file, Defendant provided only this notation in lieu of the documents that the notation refers to.

4

response, Defendant further avers that it produced all requested documents other than those that were protected by the attorney-client privilege. (*Id.* at 2.)

Finally, Plaintiffs ask this Court to order Defendant to "[p]roduce any and all documents related to or involving the process used from 2011 to the present in setting or otherwise establishing or determining reserves for underinsured motorists claims" (*Id.* at 10), and to compel Defendant to more fully answer Plaintiffs' Interrogatory No. 5, which also deals with reserves. (*Id.* at 11.) Defendant argues that it should not need to supplement the reserve history for Plaintiffs' uninsured motorist claim; Defendant asserts that it already produced all the requested documents despite the fact that Pennsylvania courts have held that reserve history is only tenuously related to a bad faith claim. (*Id.* at 6.)

The Court will address Plaintiffs' claims, and Defendant's responses, in turn.

## A. Motion Dismiss Defendant's "General Objections"

This Court agrees with Defendant that a dismissal of Defendant's "General Objections" is "unwarranted and unnecessary." (*See* ECF No. 3.) Defendant provided specific, numbered responses to every one of Plaintiffs' Interrogatories (*see* Answers and Objections to Plaintiffs' Interrogatories, ECF No. 20-1 at 3-15) and Requests for Productions. (*See* Responses and Objections to Plaintiffs' Request for Production of Documents, ECF No. 20-2, at 3-8.) The "General Objections" section—which precedes the "Specific Responses" section in both of Defendant's responses—summarizes the privileges available under Pennsylvania law. It does not replace or supersede the "Specific Responses" that Defendant provides for each RPD and interrogatory.

5

Therefore, this Court will Deny Plaintiffs' Motion to Dismiss Defendant's "General Objections."

## B. Motion to Compel Defendant to Supplement Its Production Regarding Plaintiff's Claims File

Plaintiffs seek two types of information from Plaintiff Ms. Parisi's claims file: (1) "unredacted" claims file notes[2] and (2) "unredacted [privilege] log entries by claims personnel for the period after July 28, 2016." (ECF No. 20 at 8.) Plaintiffs make various arguments for why these documents are not privileged (*see* ECF No. 20 at 5-10), which are discussed below. Defendant responds by asserting that the documents in Ms. Parisi's claims file notes that are labeled "FREE FORM - ATTORNEY" (ECF No. 20-4) and the

---

[2] Plaintiffs ask this Court to order Defendant to supplement its production of Ms. Parisi's claims file notes. Defendant initially produced claims file notes in which many of the entry headings were labeled "Redacted." (See ECF No. 20-3 at 1-2.) After conferring with Plaintiffs' counsel, Defendant supplemented its production by providing a different version of the same claims file entries where the "Redacted" labels had been replaced by "FREE FORM - ATTORNEY." (See ECF No. 20-4 at 1-2.) Plaintiffs requested that this Court order Defendant to clarify the meaning of "FREE FORM - ATTORNEY" in its Motion to Compel. (ECF No. 20 at 7-8.) Defendant explained the meaning of the notation in its Brief in Opposition; the phrase indicates that "a letter was drafted by the assigned claim professional (not system generated) and sent to an attorney." (ECF No. 21 at 3.)

This Court is uncertain about whether Defendant's clarification of the term "FREE FORM - ATTORNEY" resolves Plaintiffs' request for "unredacted" claims notes. In a literal sense, Defendant has complied with Plaintiffs requests: it provided unredacted claims file entries, and explained the meaning of the notation "FREE FORM - ATTORNEY." Plaintiffs did not file a reply to Defendant's Brief in Opposition. This Court further notes that Plaintiffs' brief is not an exemplar of clarity; in the "Conclusion" section, Plaintiffs ask this Court to order Defendant to "remove all redactions from its electronic claim file notes and provide [P]laintiffs with this sought-after information," "this" apparently referring to the various types of information Plaintiffs mentioned in pages 5-10 of their brief. Pages 5-10 are written entirely in narrative form, mention many types of information in varying degrees of depth, and lack sub-headings or any "conclusion" section where Plaintiffs summarize the information they are requesting. However, in pages 5-10, Plaintiffs seem to challenge Defendant's assertion of attorney-client privilege with respect to the new, "unredacted" version of Ms. Parisi's claims file notes. Thus, in the interests of efficiency and in hopes of avoiding another discovery dispute, this Court will err on the side of caution, and construe Plaintiffs' Motion to Compel as challenging the validity of Defendant's invoking the attorney-client privilege with respect to the claims file documents labeled "FREE FORM - ATTORNEY."

6

communications mentioned in Defendant's privilege log (ECF No. 20-5) are all protected under the attorney client privilege. (*See* ECF No. 21 at 3-6.)

As a preliminary matter, this Court agrees with Plaintiffs that the information contained in Ms. Parisi's claims file is relevant to Plaintiffs' bad faith action. Therefore, the only question is whether this information is privileged.

"A federal court sitting in a diversity must look to state law for the applicable legal principles on issues of privilege." *Serrano v. Chesapeake Appalachia, LLC*, 298 F.R.D. 271, 280 (W.D. Pa. 2014). Under Pennsylvania law, to invoke the attorney client privilege, the party seeking the privilege must establish:

1) The asserted holder of the privilege is or sought to become a client.

2) The person to whom the communication was made is a member of the bar of a court, or his subordinate.

3) The communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort.

4) The privilege has been claimed and is not waived by the client.

*Bousamra v. Excela Health*, 2017 PA Super 235 (2017), *quoting Red Vision Sys., Inc. v. Nat'l Real Estate Info. Servs., L.P.*, 2015 PA Super 5, 108 A.3d 54, 62–63, *appeal denied*, 632 Pa. 663, 116 A.3d 605 (2015) (internal citations omitted); *see also Walter v. Travelers Pers. Ins. Co.*, No. 4:12-CV-346, 2013 WL 2252729, at *3 (M.D. Pa. 2013) (the attorney client privilege applies to "(1) a communication (2) made between [the client and the attorney or his

7

agents] (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." (*quoting In re Teleglobe Communications Corp.*, 493 F.3d 345, 359 (3d Cir.2007)).

"[I]n Pennsylvania, the attorney-client privilege operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice." *Gillard v. AIG Ins. Co.*, 609 Pa. 65, 88–89 (2011). Thus, "[t]he privilege applies both to information that the client provides to the lawyer for purposes of obtaining legal advice, as well as to the advice the attorney furnishes to the client." *Audi of Am., Inc. v. Bronsberg & Hughes Pontiac, Inc.*, No. 3:16-CV-2470, 2017 WL 2480588, at *5 (M.D. Pa. 2017). "To this end, the Supreme Court has explained that 'the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice.'" *Id., citing Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981).

"[W]hen the client is a corporation, the privilege extends to communications between its attorney and agents or employees authorized to act on the corporation's behalf." *Red Vision Sys., Inc.*, 108 A.3d at 60, *quoting Pennsylvania State University v. W.C.A.B. (Sox)*, 83 A.3d 1081, 1092 (Pa. Cmwlth. 2013).

"A proper claim of privilege requires a specific designation and description of the documents within its scope as well as precise and certain reasons for preserving their confidentiality." *Endeavor Energy Res., L.P. v. Gatto & Reitz, LLC*, No. 2:13CV542, 2017 WL 1190499, at *13 (W.D. Pa. 2017), *citing Smithkline v. Beecham Corp. et al.*, 232 F.R.D. 467, 482 (E.D. Pa. 2005) (internal citations omitted). If the party asserting the privilege has failed to

8

satisfy its burden, the Court may require the party to submit the allegedly privileged documents to the Court for *in camera* review. *See, e.g., T.M. v. Elwyn, Inc.*, 2008 PA Super 113, ¶ 23, 950 A.2d 1050, 1063 (2008) ("We therefore remand, noting that the court may conduct in camera review of documents identified by [the defendant] to be subject to a privilege, to better analyze the privilege issues, as needed."); *Gocial v. Indep. Blue Cross*, 2003 PA Super 242, ¶ 28, 827 A.2d 1216, 1223 (2003) (remanding to determine whether documents were privileged and noting that "[i]n some instances, in camera review may be required."); *see also Yocabet v. UPMC Presbyterian*, 2015 PA Super 132, 119 A.3d 1012, 1029 (2015) (requiring party claiming privilege to create a privilege log and produce the allegedly privileged documents for *in camera* review); *Pennsylvania Dep't of Educ. v. Bagwell*, 131 A.3d 638, 648 (Pa. Commw. Ct. 2015) (noting that Pennsylvania courts "attempt to preserve attorney privileged material through various methods, including in camera review and privilege logs."); *Walter*, 2013 WL 2252729 at 1 (noting that "[i]n addition to filing a brief in support of its privilege assertions, the defendant has submitted the withheld documents to the court for *in camera* review.").

Based on the record before it, this Court cannot determine whether the attorney-client privilege applies to the documents at issue. Therefore, this Court will order Defendant to provide this Court with (1) the documents referred to in the claims file notes as "FREE FORM - ATTORNEY" and (2) the documents listed in the privilege log. After this Court conducts an *in camera* review of these documents, it will determine whether Defendant properly asserted that these documents are protected by the attorney-client privilege. Thereafter, this Court will rule on this portion of Plaintiffs' Motion to Compel.

9

This Court notes that it appears that Defendant made a good faith effort to comply with Plaintiffs' discovery request. Defendant produced unredacted claims file notes that labeled the communications as "FREE FORM – ATTORNEY," and provided a lengthy privilege log which states the date, author, recipient (in most cases), subject matter, and privilege being invoked for every document that Defendant did not produce. (*See* ECF No. 20-5.) However, while Defendant has indicated that all of the relevant documents were transmitted to counsel, this fact by itself is insufficient to establish that these documents are privileged. Defendants must also establish that the communications were made "for the purpose of securing either an opinion of law, legal services or assistance in a legal matter." *Red Vision Sys., Inc.*, 108 A.3d at 62–63.

While this Court will defer a decision about whether Defendant established attorney-client privilege with respect to the unproduced documents, this Court will address several arguments that Plaintiffs make for why the attorney-client privilege should not apply to the documents in question. The Court will address these arguments now to narrow the remaining issues going forward.

1. *Plaintiffs' Arguments Regarding Redacted Claims File Entries*

Plaintiffs contend that Defendant cannot properly invoke the attorney-client privilege for any communications sent before January 28, 2016, when Ms. Parisi's claim was referred to Attorney McDonnell, the outside counsel retained to handle the claim. (*See* ECF 20 at 7.) However, several notes from Ms. Parisi's claims file that predate the retention of Attorney McDonnell were apparently sent to attorneys (these documents are labeled "FREE FORM – ATTORNEY," indicating that the claims adjusters who made the

10

notes sent them to an attorney).³ This Court is not aware of any authority that limits the attorney-client privilege to communications with outside counsel, as opposed to in-house counsel, and Plaintiff has cited none. Therefore, this Court rejects Plaintiffs' claim that the attorney-client privilege could not have attached before Attorney McDonnell was retained as outside counsel to handle Plaintiffs' claim.

Plaintiffs next claim that the redacted claims files entries are not subject to attorney-client privilege because "they are materials prepared in the ordinary course of business." (ECF No. 20 at 7.) To support this contention, Plaintiffs cite to Federal Rule of Civil Procedure 26(b)(3), which deals with the work product doctrine, not the attorney-client privilege. The attorney-client privilege is governed by state law, not FRCP 26(b)(3). *See, e.g., Penn Mut. Life Ins. Co. v. Rodney Reed 2006 Ins. Tr.*, No. 09-CV-0663 JCJ, 2011 WL 1636949, at *2 (D. Del. 2011) (noting that "[w]hile the attorney-client privilege comes from state law in diversity cases, '[t]he work-product doctrine, codified in Fed.R.Civ.P. 26(b)(3), governs all cases in federal court.'") (internal citations omitted). Plaintiffs' reliance on *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252 (3d Cir. 1993) and *Borgia v. State Farm Mut. Auto. Ins. Co.*, No. CIV.A. 14-3149, 2014 WL 4375643 (E.D. Pa. 2014) is similarly misguided, as those cases involved the work-product doctrine, not the attorney-client privilege. While "[w]ork product prepared in the ordinary course of business is not protected from discovery," *Sharp v. Gov't of Virgin Islands*, 77 F. App'x 82, 85 (3d Cir. 2003), this Court is not aware of any such limitation to the attorney-client privilege. Therefore,

---

³ As noted above, this Court will conduct an in camera review of these documents to determine whether they are protected by the attorney-client privilege.

11

this Court rejects Plaintiffs' argument that the requested documents are not subject to the attorney-client privilege simply because they were prepared in the ordinary course of business.

*2. Plaintiffs' Arguments Regarding the Documents Listed in the Privilege Log*

Plaintiffs argue that any communications concerning the independent medical examination ("IME") are not privileged because they were prepared in the ordinary course of business. (*See* ECF No. 20 at 8.) However, as explained above, whether or not these communications were generated in the ordinary course of business is irrelevant to whether they are protected under the attorney-client privilege. Therefore, this Court rejects Plaintiffs' argument that the documents concerning the IME cannot be privileged for this reason.

Plaintiffs next assert that the documents listed in the privilege log titled "Communications with counsel regarding the value and merits of claim" are not privileged because they "go to the heart of this bad faith action[.]" (ECF No. 20 at 8.) However, as Defendant notes, the Third Circuit has unequivocally held that "[r]elevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged, and that remains the case even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue." *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994). Moreover, "[a] party does not lose the privilege to protect attorney client communications from disclosure in discovery when his or her state of mind is put in issue in the action." *Id.* Thus, while Plaintiffs are correct that these communications "go to the heart" of

12

Plaintiffs' bad faith claim, this fact does not change the analysis of whether these communications are protected by the attorney-client privilege.

Plaintiffs also claim that "communications made by the claims representatives are not immune from discovery." (ECF No. 20 at 9.) This argument is easily dismissed. "[T]he attorney-client privilege operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice." *Gillard*, 609 Pa. at 88–89 (2011). The fact that the documents were prepared by the claims adjusters, rather than the attorney to whom the documents were sent, is immaterial to the analysis of whether those documents are protected under the attorney-client privilege.

Finally, Plaintiffs claim that the attorney-client privilege does not protect materials prepared by Attorney McDonnell because, according to Plaintiffs, Attorney McDonnell was acting as a claims handler or claims investigator, not as an attorney. (ECF No. 20 at 9.) Plaintiffs correctly note that the attorney-client privilege only attaches to communications with an attorney. This Court will defer a decision about whether the attorney-client privilege attaches to documents prepared by Attorney McDonnell until it conducts an *in camera* review of the documents that Defendant asserts are entitled to the attorney-client privilege. *See Walter*, 2013 WL 2252729.

### C. Motion to Supplement Production Regarding Reserves for Ms. Parisi's Claim

Plaintiffs served Defendant with a Request for Production of Documents ("RPD") that asked Defendant to "[p]roduce any and all documents related to or involving the process used from 2011 to the present in setting or otherwise establishing or determining

13

reserves for uninsured motorists claims." (*See* RPD No. 4, ECF No. 20-2 at 4.) Defendant responded to Plaintiffs' RPD No. 4 with a boilerplate response that the request was overly broad, not reasonably calculated to lead to the discovery of admissible evidence, and that the information requested irrelevant and protected by the work product doctrine. (*Id.*)

Plaintiffs also served Defendant with an Interrogatory asking Defendant to provide answers to the following questions: "(a) the date the reserve was initially set and in what amount [*sic*]; (b) the reasoning for setting the initial reserve at the level it was initially set [*sic*]; (c) the individual who set the initial reserve; (d) the dates of any increases in reserve [*sic*]; the reasons for the increase, and the individuals who made the increase; and (e) any other individual(s) who provided an opinion or advice on what the reserve should be." (Interrogatory No. 5, ECF No. 20-1 at 5.) Defendant responded with the same boilerplate objection it gave to Plaintiffs' RPD No. 4. (*Id.*) However, Defendant also stated that "[n]ot withstanding [sic] the objection, State Farm will produce information regarding its reserve." (*Id.*) Defendant subsequently produced a one-page document titled "Reserve History for Claim 384G58363." (ECF No. 20-9.) This document indicates the initial date that the reserve amount was set for Ms. Parisi's claim, the amount that it was set for, the subsequent dates that it was changed, the amounts it was changed to, and the persons who performed the changes. (*Id.*) However, this document is very difficult to read—the font is small and blurry, and one must squint to read the text.

Plaintiffs seek additional responses to RPD No. 4 and Interrogatory No. 5. Specifically, Plaintiffs urge this Court to "order the [D]efendant to provide a clear and

decipherable reserve history for this claim, without redaction or missing components, and to answer the [I]nterrogatory No. 5 above with its subsets." (ECF No. 20 at 11.)

"An insurance reserve is a pool of funds allocated to satisfy obligations that may arise under a claim." *PECO Energy Co. v. Ins. Co. of N. Am.*, 852 A.2d 1230, 1232, 2004 PA Super 221, P3, 2004 Pa. Super. LEXIS 1406, *5. "Pennsylvania law requires insurance companies to set aside reserves upon notice of potential claims under their policies, *see* 40 P.S. §§ 71, 71.1, 73, 92, 112, 115, 151, 156, in order to 'ensure that insurance companies are able to pay once liability is established or settlement is reached.'" *Sharp v. Travelers Pers. Sec. Ins. Co.*, No. 12 CV 6483, 2014 WL 8863084, at *7 (Pa. Com. Pl. 2014), *quoting Fidelity & Deposit Co. of Maryland v. McCulloch*, 168 F.R.D. 516, 525 (E.D. Pa. 1996).

"There is competing treatment of whether reserve information is discoverable in a bad faith lawsuit." *Shaffer v. State Farm Mut. Auto. Ins. Co.*, No. 1:13-CV-01837, 2014 WL 931101, at *2 (M.D. Pa. 2014). "Some courts have noted a 'tenuous link between reserves and actual liability given that numerous considerations factor into complying with this statutory directive.'" *Sharp*, 2014 WL 8863084 at *8, *quoting Fidelity & Deposit Co.*, 168 F.R.D. at 525 (*citing Rhone–Poulenc Rorer, Inc. v. Home Indemnity Co.*, 139 F.R.D. 609, 613 (E.D. Pa. 1991)). However, as a court of common pleas recently stated:

> Several trial courts, including this court, have reasoned that insurance reserves are discoverable in bad faith litigation against insurers, where liability for the underlying claim has already been established, since such information may be relevant to the issue of whether the insurer acted in bad faith in failing to settle or pay the original claim. *See Consugar v. Nationwide Insurance Co. of America*, 2011 WL

15

2360208, at * 5 (M.D. Pa. 2011) ("Since plaintiff here claims that defendant acted in bad faith, a comparison between the reserve value of the claim and defendant's actions in processing plaintiff's claim could shed light on defendant's potential liability."); *North River Ins. Co. [v. Greater New York Mut. Ins. Co.]*, 872 F.Supp. [1141] at 1412 [(E.D. Pa. 1995)] (finding reserve information "relevant to the question of whether or not [the insurer] acted in bad faith during the pre-trial settlement negotiations."); *McAndrew v. Donegal Mutual Ins. Co.*, 56 Pa. D. & C. 4th 1, 18 (Lacka. Co. 2002); *Fretz v. Mutual Benefit Ins. Co.*, 37 Pa. D. & C. 4th 173, 180 (Alleg. Co. 1998).

*Sharp*, 2014 WL 8863084 at *8.

As already noted, Plaintiffs seek additional production from Defendant regarding RPD No. 4 and Interrogatory No. 5. In its Brief in Opposition, Defendant responded to both requests in a boilerplate statement that the reserve information is irrelevant. (*See* ECF No. 20-1 at 6; ECF No. 20-2 at 4.) However, like the courts mentioned above, this Court is satisfied that the reserve history is relevant to Plaintiffs' bad faith claim.

Defendant's boilerplate responses also contend that Plaintiffs' requests are overly broad. (*See* ECF No. 20-1 at 6; ECF No. 20-2 at 6.) This Court disagrees with Defendant's contention in regards to Interrogatory No. 5, in which Plaintiffs' seek information regarding the reserve history for Ms. Parisi's own claim. Because the gist of Plaintiffs' complaint is that Defendant acted in bad faith in handling Ms. Parisi's underinsured motorists claim, Plaintiffs' request for the reserve history for Ms. Parisi's claim is not overly broad.

16

However, this Court agrees with Defendant that RPD No. 4 is overly broad. While Plaintiffs have demonstrated the relevancy of the reserve amounts for Ms. Parisi's own claim, Plaintiffs have not shown—nor even argued in their Motion to Compel—that reserve information for other insureds is relevant to Plaintiffs' claim.[4] Therefore, Defendant will only be required to produce any relevant documentation of the reserve history for Ms. Parisi's claim.[5]

The only other objection that Defendant has put forth is its boilerplate response that the information requested by RPD No. 4 and Interrogatory No. 5 "is protected from discovery by the work-product doctrine." (ECF No. 20-1 at 6.) However, Defendant's threadbare and conclusory invocations of the work product doctrine fail to establish that Defendant is entitled to the privilege it asserts. Moreover, Defendant does not even argue in its Brief in Opposition that this information is protected by the work-product doctrine. Further, according to the reserve history for Ms. Parisi's claim, the reserve values were set by non-attorneys. (ECF No. 20-9.) In fact, Defendant has not asserted that the reserve amounts were set or altered at the direction of, or with the cooperation of, counsel.

---

[4] RPD No. 4 asks for "all documents relating to or involving the process used from 2011 to the present in setting or otherwise establishing or determining reserves for underinsured motorists claims." (ECF No. 20-2 at 4.) However, neither Plaintiffs' Motion to Compel nor Defendant's Brief in Opposition contain any argument concerning whether or not discovery of Defendant's reserve process for other insureds is appropriate. In other words, neither party addresses the issue of whether RPD No. 4 seeks documents that are outside of the context of Plaintiffs' specific claim. To the extent that Plaintiffs' ask for discovery of reserve information for other claims, this Court declines the invitation to allow Plaintiffs to embark on a fishing expedition.

[5] This Court notes that, in its Response, Defendant claims that it "does not possess any other 'documents that satisfy Request for Production No. 4, and answer [P]laintiffs' Interrogatory No. 5(a)-(e).'" (ECF No. 21 at 6.) However, having clarified the scope of RPD No. 4 above, this Court asks Defendant to again review RPD No. 4 and determine whether it has documents that are responsive. Obviously, Defendant cannot be required to produce documents that it does not possess.

17

Therefore, Defendant has failed to establish that the information Plaintiffs seek is protected by the work-product doctrine.

For the reasons stated above, Defendant will be ordered (1) to produce any documents in its possession that are responsive to RPD No. 4, limited to documents concerning Plaintiffs' claim, and (2) to answer Plaintiff's Interrogatory Nos. 5(b), 5(d), and 5(e).

## VI. Conclusion

In sum, this Court denies Plaintiffs' Motion to Dismiss Defendant's General Objections. This Court defers judgment on whether Defendant appropriately invoked the attorney-client privilege for the claims files titled "FREE FORM – ATTORNEY," and for the documents listed in the privilege log. This Court orders Defendant to produce these documents to the Court for an *in camera* review. After its review, this Court will evaluate whether these documents are in fact privileged.[6] Finally, this Court orders Defendants to produce any existing documents that are response to RPD No. 4, and to answer Interrogatory Nos. 5(b), 5(d), and 5(e).

An appropriate order follows.

---

[6] This Court will not give further consideration to Plaintiffs' arguments regarding the attorney-client privilege that this Court rejected here.

18

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MELISSA C. PARISI and MICHAEL C. PARISI, III, wife and husband, | ) ) ) | CIVIL ACTION NO. 3:16-179 |
| | ) | JUDGE KIM R. GIBSON |
| Plaintiffs, | ) | |
| v. | ) ) | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

## ORDER

**AND NOW**, this 2nd day of October, 2017, upon consideration of Plaintiffs' Motion to Compel (ECF No. 20), and in accordance with the attached memorandum opinion, **IT IS HEREBY ORDERED** that the motion is **GRANTED in part, DENIED in part, and DEFERRED in part** as follows:

1. The motion is **GRANTED** with respect to RPD No. 4, though Defendant must only produce documents containing reserve information for Plaintiffs' specific claim within twenty-one (21) days. This court recognizes that any documentation regarding Plaintiffs' reserve history could expose Defendant's proprietary information and business practices, and is cognizant of the confidentiality agreement that was signed by the parties. (ECF No. 22-2.) Therefore, this Court will require that any documentation relating to Plaintiffs' reserve history be filed under seal as requested by Defendant. Additionally, if Defendant is in possession of documents that

are responsive to RPD No. 4, and wishes to assert attorney-client or work-product privilege in regards to these documents, Defendant must produce those documents to this Court for *in camera* review within twenty-one (21) days.

2. The motion is **GRANTED** with respect to Interrogatory No. 5. Defendant must answer Interrogatory Nos. 5(b), 5(d), and 5(e) within twenty-one (21) days.

3. The motion is **DENIED** with respect to Defendant's "General Objections."

4. The motion is **DEFERRED** with respect to the claims files labeled as "FREE FORM - ATTORNEY" and with respect to the documents listed in the privilege log. Defendant is directed to provide these documents to the Court for *in camera* review within twenty-one (21) days. After this Court reviews the documents for which Defendant claims attorney-client privilege, this Court will rule on whether these documents are privileged from discovery.

BY THE COURT:

_____
KIM R. GIBSON
UNITED STATES DISTRICT JUDGE