## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MELISSA C. PARISI** and **MICHAEL** | ) | **CIVIL ACTION NO. 3:16-179** |
| **C. PARISI, III,** wife and husband, | ) | |
| | ) | **JUDGE KIM R. GIBSON** |
| **Plaintiffs,** | ) | |
| v. | ) | |
| | ) | |
| **STATE FARM MUTUAL** | ) | |
| **AUTOMOBILE INSURANCE** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

### I.    Introduction

Pending before the Court are (1) a Motion for Partial Summary Judgment on Bad Faith filed by Plaintiffs Melissa and Michael Parisi (ECF No. 38), and (2) a Motion for Summary Judgment filed by Defendant State Farm (ECF No. 40). The motions have been fully briefed (*see* ECF Nos. 39, 41, 55, 58, 63) and are ripe for disposition. For the reasons stated below, the Court will **DENY** the Parisis' motion and will **GRANT in PART, and DENY in PART,** State Farm's motion.

### II.    Jurisdiction

The Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the parties are completely diverse and the amount in controversy exceeds $75,000. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to the claims occurred in the Western District of Pennsylvania.

III.    Background

A.    Factual History[1]

1.    Melissa Parisi Files a Claim for Underinsured Motorist Benefits

Melissa Parisi[2] sustained injuries in a car accident on April 28, 2014.[3] At the time of

the accident, Parisi carried a State Farm insurance policy.[4] Parisi's policy provided $100,000

in underinsured motorist coverage.[5]

Parisi filed an underinsured motorist claim with State Farm via a letter dated May

23, 2014.[6] Parisi's attorney, Douglas Stoehr, drafted and signed the letter.[7] Stoehr stated that

the other motorist carried a Met Life insurance policy with a $15,000 limit.[8] Stoehr wrote

that, given "the serious nature" of Ms. Parisi's injuries, he had "no doubt" that her claim

would exceed the limit of the other driver's policy.[9]

State Farm assigned Parisi's claim to Scott Whiteside, a claims representative.[10]

Whiteside reviewed Parisi's claim on June 3, 2014, and determined that the other driver

---

[1] The Court derived the facts in this section from State Farm's Concise Statement of Material Facts (ECF No. 42), the Parisis' Response to State Farm's Concise Statement of Material Facts (ECF No. 56), the Parisis' Concise Statement of Material Facts (ECF No. 43), and State Farm's Response to the Parisis' Concise Statement of Material Facts (ECF No. 57). These facts are undisputed unless otherwise noted.

[2] The Court refers to Melissa Parisi simply as "Parisi" throughout.

[3] ECF No. 42 at ¶ 1; ECF No. 56 at ¶ 1; see Expert Medical Report by Dr. Wayne D'Agaro, ECF No. 57-10 at 6.

[4] ECF No. 42 at ¶ 2; ECF No. 56 at ¶ 2.

[5] ECF No. 42 at ¶ 3; ECF No. 56 at ¶ 3.

[6] ECF No. 48 at ¶ 18; ECF No. 57 at ¶ 18.

[7] See ECF No. 45-17.

[8] Id. at 1.

[9] Id.

[10] ECF No. 48 at ¶ 19; ECF No. 57 at ¶ 19.

caused the crash.[11] The same day, Whiteside called Stoehr's office, but did not speak with Stoehr because he was unavailable.[12]

On June 5, 2014, Whiteside wrote to Stoehr.[13] Whiteside asked Stoehr to provide State Farm with "written confirmation" of the other motorist's insurance limits and stated that State Farm would not authorize Stoehr to settle with the other motorist until it received this written confirmation.[14] Whiteside also stated that State Farm understood that Parisi continued to seek medical care for her injuries.[15] And Whiteside stated that State Farm needed records of "all injuries and all treatment" to finalize Parisi's claim.[16] Whiteside requested that "[u]pon your client concluding [her] medical treatment, please advise me regarding the same."[17]

Whiteside entered two claims notes on June 15, 2014.[18] Whiteside stated that the "CV" (current value) of Parisi's claim was $0.[19] Whiteside also noted that he had requested additional information from Stoehr "so that UIM evaluation may be finalized."[20]

---

[11] ECF No. 42 at ¶¶ 11, 12; ECF No. 56 at ¶¶ 11, 12.

[12] ECF No. 48 at ¶ 24; ECF No. 57 at ¶ 24.

[13] ECF No. 42 at ¶ 15; ECF No. 56 at ¶ 15.

[14] ECF No. 42-4 at 26.

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] ECF No. 57-3 at 21.

[19] ECF No. 42 at ¶ 16. Parisi denies that Whiteside's claim notes placed a current value on Parisi's underinsured motorist claim. (*See* ECF No. 56 at ¶ 16.) But Parisi does not reference the record or provide any citation for her denial. (*See id.*) Because she failed to cite to the record to substantiate her denial as required by Fed. R. Civ. P. 56(c)(1), the Court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(E). Therefore, the Court deems this allegation as admitted.

[20] *Id.*

3

## 2.    State Farm Requests Additional Information

Whiteside sent Stoehr six letters between July 2014 and January 2015.[21] These letters are extremely similar. In each letter, Whiteside requests that Stoehr provide State Farm with written confirmation of the other motorist's third-party coverage.[22] The letters either state that State Farm understands that Parisi continues to seek medical treatment for her injuries, or request that Stoehr inform State Farm about whether Parisi continues to receive treatment.[23] In each letter, Whiteside asks Stoehr to notify State Farm when Parisi completes treatment and requests that he provide State Farm with Parisi's complete medical records at that time.[24]

Whiteside also states that Stoehr need not provide documentation of medical treatment that Parisi already submitted for her first-party claim.[25] This is because Whiteside had access to, and reviewed, the medical records from Parisi's first-party claims file.[26] These records included: two reports from Parisi's treating neurologist who, on May 13, 2014, diagnosed her with "post-concussion syndrome" and, during Parisi's second office visit on May 27, 2014, noted that she experienced "a lot of memory issues;" two reports from a concussion specialist who, during two appointments in May 2014, confirmed Parisi's diagnoses of a concussion and labyrinthine dysfunction and reported that she experienced

---

[21] ECF No. 42 at ¶¶ 17-23; ECF No. 56 at ¶¶ 17-23.

[22] ECF No.57-4 at 26; ECF No. 45-19; ECF No. 45-20; ECF No. 45-21; ECF No. 45-22; ECF No. 45-23.

[23] Id.

[24] See id.

[25] See ECF No. 45-21; ECF No. 45-22; ECF No. 45-23.

[26] ECF No. 48 at ¶ 27; ECF No. 57 at ¶ 27.

difficulty concentrating and deficits in short-term memory; and records from the forty physical therapy sessions that Parisi completed between May 2014 and August 2014.[27]

On February 18, 2015, Stoehr submitted another batch of Parisi's medical records.[28] These included E.R. records; reports from four different doctors who treated Ms. Parisi following the accident; and updated documentation of Parisi's ongoing physical therapy.[29] In this letter, Stoehr informed Whiteside that he typically "work[s] with the [underinsured motorist] claims representative after [he] settle[s] the underlying claim."[30] Whiteside confirmed receipt of the records via letter dated March 4, 2015.[31] Whiteside requested that Stoehr provide documentation of any future care that Parisi received so that State Farm could consider all treatment when making a final decision on her claim.[32]

### 3. State Farm Completes an Injury Evaluation

Whiteside completed an injury evaluation on March 17, 2015.[33] Whiteside noted that Parisi suffered from post-concussion syndrome and experienced dizziness, headaches, balance problems, and sensitivity to sound and light.[34] Whiteside confirmed that the automobile accident caused Parisi's injuries and concluded that Parisi's medical treatment appeared "reasonable and necessary."[35]

---

[27] ECF No. 45-28; ECF No. 45-29; ECF No. 45-30.
[28] ECF No. 48 at ¶ 30; ECF No. 57 at ¶ 30.
[29] Id.
[30] ECF No. 42 that ¶ 28; ECF No. 56 at ¶ 28.
[31] ECF No. 45-35.
[32] Id.
[33] ECF No. 45-11 at 4.
[34] Id. at 7.
[35] Id. at 4-6.

Stoehr provided additional medical records on March 18, 2015.[36] These records included a report from Dr. Michael Drass, who conducted a physical examination of Parisi; two office notes from Dr. Clark, Parisi's neurologist; four months of records from Parisi's ongoing physical therapy; and reports from two visits to Parisi's primary care physician.[37] Additionally, Stoehr stated that Parisi might receive an evaluation by a neuropsychologist and that he would inform State Farm if that occurred.[38] Whiteside did not update the injury evaluation after he received these records.[39]

Stoehr informed Whiteside via letter dated March 19, 2015, that he settled with the other motorist for the $15,000 policy limit.[40]

All told, Stoehr provided State Farm with over 200 pages of medical records in February and March 2015.[41] But Whiteside—who handled Parisi's claim until the end of May 2015—never asked to interview Parisi.[42] He never requested authorization to obtain Parisi's medical records himself.[43] He never utilized a nurse to evaluate Parisi's claim.[44] And he never asked Parisi to provide a statement under oath or submit to an independent

---

[36] ECF No. 45-36.
[37] Id.
[38] Id.
[39] ECF No. 48 at ¶ 34; ECF No. 57 at ¶ 34.
[40] ECF No. 42-4 at 13.
[41] ECF No. 48 at ¶ 39; ECF No. 57 at ¶ 39.
[42] ECF No. 48 at ¶ 36; ECF No. 57 at ¶ 36.
[43] Id.
[44] Id.

6

medical examination.[45] But Whiteside did place a value on Parisi's claim.[46] In April 2015, Whiteside valued Parisi's claim between $0 and $7,500.[47]

Stoehr sent additional medical records on June 1, 2015.[48] These records included two reports from Dr. Clark, Parisi's neurologist, who noted Parisi's worsening "forgetfulness, headaches, and speech problems . . . ."[49] Stoehr also provided a report from Dr. Baker—the concussion specialist—who noted increased symptom severity.[50] Stoehr also submitted letters from Parisi's husband, daughter, and sister that detailed the changes they observed in Parisi since the car accident.[51] State Farm never responded to Stoehr's June 1, 2015 letter.[52]

State Farm reassigned Parisi's claim to Edward Naser in August 2015.[53] Naser sent Stoehr letters in August and October 2015 that asked Stoehr to submit "your underinsured demand package when complete."[54] Stoehr did not respond to either letter.[55]

---

[45] ECF No. 48 at ¶¶ 37, 38; ECF No. 57 at ¶¶ 37, 38.
[46] ECF No. 48 at ¶ 41; ECF No. 57 at ¶ 41.
[47] *Id.*
[48] ECF No. 48 at ¶ 48; ECF No. 57 at ¶ 48.
[49] ECF No. 45-37 at 9.
[50] ECF No. 45-37 at 16.
[51] *Id.* at 17-23.
[52] ECF No. 48 at ¶ 49; ECF No. 57 at ¶ 49.
[53] ECF No. 48 at ¶ 51; ECF No. 57 at ¶ 51. The parties dispute whether State Farm assigned Parisi's claim to an additional claims handler, Marla Olinzock, between Whiteside and Naser. State Farm claims that it assigned Parisi's claim to Olinzock in June 2015, and further states that it reassigned her claim to Naser in August after Olinzock left work on long-term disability. (ECF No. 42 at ¶¶ 43-44.) Parisi disputes that State Farm assigned her claim to Olinzock, and points to the deposition of Reed, Naser's supervisor, who stated that Olinzock was not a member of his claims team and that he did not know why Olinzock made entries on Parisi's claims file during June and August of 2015. (ECF No. 45-77 at 30-33.) But the Court doubts whether this disputed fact bears any relevance to Parisi's bad faith claim.
[54] ECF No. 45-38; ECF No. 45-39.
[55] ECF No. 42 at ¶ 55; ECF No. 56 at ¶ 45.

Naser called Stoehr on November 11, 2015.[56] Stoehr told Naser that Parisi was still

treating with her neurologist and that she had a follow-up appointment with her

concussion specialist.[57] Stoehr told Naser that he would submit additional medical records

to State Farm.[58]

Naser sent Stoehr a letter on November 11, 2015 that asked Stoehr to submit a

demand package for consideration.[59] Stoehr responded on November 19, 2015.[60] In his

response, Stoehr provided Naser with a neurological evaluation prepared by Dr. Michelle

Arbitell, dated May 14, 2015, which Parisi obtained at her own expense.[61] Dr. Arbitell

reported that Parisi exhibited impairments in several tests of cognitive functioning.[62] Stoehr

also provided updated treatment records from Parisi's speech language therapist,

examination records from a physician, documentation of Parisi's lost wages and medical

---

[56] ECF No. 42 at ¶ 56; ECF No. 56 at ¶ 56.

[57] The Court deems this fact admitted. State Farm presented evidence to substantiate this claim (*see* ECF No. 57-3 at 12; ECF No. 42-5 at 102). Parisi does not present evidence to rebut State Farm's factual allegations. Instead, Parisi denies these facts "to the extent they rely upon hearsay testimony." (ECF No. 56 at ¶¶ 57-58.) The Court easily holds that these facts do not rely on hearsay. The Federal Rules of Evidence exclude from the definition of "hearsay" a statement by an opposing party made "by the party in an individual or representative capacity" or "made by the party's agent . . . on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(A); Fed. R. Evid. (d)(2)(D). An attorney's statement made while representing his client on a matter within the scope of the agency relationship is excluded from the definition of hearsay. *See, e.g., Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1198 (3d Cir. 1993); *Moody v. Twp. of Marlboro*, 885 F. Supp. 101, 104 (D. N.J. 1995); *Palmer v. Nassan*, No. 10CV0922, 2011 WL 286127, at *2 (W.D. Pa. Jan. 26, 2011). The Court finds that Stoehr made these statements in a representative capacity and that the statements directly related to Stoehr's representation of Parisi. Accordingly, the Court finds that Stoehr's statements do not constitute hearsay. Therefore, the Court may consider the statements at the summary judgment stage.

[58] ECF No. 57-3 at 12; ECF No. 42-5 at 103.

[59] ECF No. 42 at ¶ 59; ECF No. 56 at ¶ 59.

[60] ECF No. 42 at ¶ 60; ECF No. 56 at ¶ 60.

[61] ECF No. 48 at ¶¶ 54-57; ECF No. 57 at ¶¶ 54-57.

[62] *See, generally,* ECF No. 45-40.

expenses, and an affidavit from a physician-assistant with whom Parisi worked. The physician-assistant testified that Parisi's work performance, attention, and concentration decreased precipitously following the car accident and that she could no longer rely on Parisi at work.[63] Additionally, Stoehr stated that Parisi scheduled an appointment with her neurologist in late December and that she would also schedule an appointment with her concussion specialist.[64] Stoehr concluded the letter by telling Naser that "[p]erhaps after these upcoming medical appointments we may be in a position to settle this claim."[65]

### 4. State Farm Completes an Updated Injury Evaluation

Naser interpreted Stoehr's submission of medical records on November 19, 2015 as a demand for settlement.[66] Naser completed an updated injury evaluation for Parisi's claim on December 15, 2015.[67] Naser noted that the car accident caused Parisi's injuries and that her medical treatment appeared to be "reasonable and necessary."[68] Naser set the value range on Parisi's claim between $35,000 and $50,000 for pain and suffering, $1,800 for past medical bills, and $10,000 for past wage loss.[69] Naser's estimate did not account for future pain and suffering.[70] Bill Reed, Naser's supervisor, understood that Naser asked for

---

[63] ECF No. 48 at ¶¶ 57-58; ECF No. 57 at ¶¶ 57-58.

[64] ECF No. 45-51 at 5.

[65] *Id.*

[66] ECF No. 45-72, Naser Deposition Transcript at pp. 51-52.

[67] ECF No. 48 at ¶ 60; ECF No. 57 at ¶ 60.

[68] ECF No. 45-12. The Court notes that Parisi claims that Naser did not consult all of the medical records in her file when completing his injury evaluation. State Farm disputes this, and argues that Naser did in fact consult Parisi's entire medical file. Naser testified that he "did not recall" whether he reviewed the medical records that Stoehr gave State Farm prior to November 19, 2015. (ECF No. 45-72 at Deposition Transcript pp. 55-56.) But Naser testified that he generally consults "all the records" that State Farm possesses when completing an injury evaluation. (*Id.* at p. 56.)

[69] ECF No. 48 at ¶ 71; ECF No. 57 at ¶ 71.

[70] ECF No. 48 at ¶ 72; ECF No. 57 at ¶ 72.

settlement authority by placing a value on Parisi's claim.[71] On December 24, 2015, Reed gave Naser authority to settle for up to $26,800.[72]

Stoehr sent another letter on December 30, 2015.[73] Stoehr enclosed a twenty-minute videotaped conversation between Parisi and her family which, according to Stoehr, elucidated Parisi's enduring cognitive deficits and the negative impacts that those defects had on her family life.[74] Stoehr stated that he would provide Naser with a report from a recent consultation with Parisi's neurologist.[75] Stoehr stated that, when he provided Naser with the note, "[a]t that time I will likely make a demand for settlement."[76] Stoehr advised Naser that he would demand the $100,000 policy limit "at that time."[77] Stoehr requested that Naser explain State Farm's reasoning in writing if State Farm disagreed with Stoehr's opinion that the value of Parisi's claim exceeded the $100,000 policy limit.[78]

### 5. State Farm Offers to Settle

During a telephone call with Stoehr on January 5, 2016, Naser offered to settle Parisi's claim for $17,000.[79] This offer fell at the low end of Naser's settlement authority.[80] Naser did not offer to settle for $26,800, even though he had the authority to settle for that

---

[71] ECF No. 48 at ¶ 73; ECF No. 57 at ¶ 73.

[72] ECF No. 48 at ¶ 74; ECF No. 57 at ¶ 74. The parties dispute the value that Reed placed on Parisi's claim, but agree that $26,800—the amount that Reed authorized Naser to settle for—fell within Reed's valuation of her claim.

[73] *See* ECF No. 45-43.

[74] *Id.*

[75] *Id.*

[76] *Id.*

[77] *Id.*

[78] *Id.*

[79] ECF No. 42 at ¶ 76; ECF No. 56 at ¶ 76.

[80] ECF No. 48 at ¶ 80; ECF No. 57 at ¶ 80.

amount.[81] Naser did not offer to settle for a higher amount within the range of his settlement authority because Stoehr unequivocally stated that Parisi would not accept less than $100,000.[82] Naser did not think that Parisi would accept any settlement offer in State Farm's settlement range, and believed that making an additional offer within that range would have been futile.[83]

State Farm had a policy to advance the amount of its first settlement offer to a claimant if the claimant and State Farm reached an "impasse" in settlement negotiations.[84] But Naser did not offer to advance Parisi $17,000 because he did not believe that the parties reached an impasse.[85]

Stoehr wrote to Naser again on January 13, 2016.[86] Stoehr enclosed updated medical records from Parisi's neurologist.[87] Stoehr also reiterated his request that State Farm explain its reasoning for offering less than the $100,000 policy limit.[88] Stoehr further renewed his $100,000 demand, stated that State Farm acted in bad faith by extending the $17,000 offer, and threatened to sue unless State Farm provided written explanation for its decision to only offer $17,000.[89]

---

[81] *Id.*

[82] ECF No. 42 at ¶ 77. The Court deems this fact as admitted. Contrary to Parisi's contention, this statement does not constitute hearsay because it is an admission of a party opponent. Therefore, the Court deems this fact as admitted for the reasons stated in footnote 57, *supra*.

[83] ECF No. 42 at ¶ 78; ECF No. 56 at ¶ 78.

[84] ECF No. 48 at ¶ 82; ECF No. 57 at ¶ 82.

[85] ECF No. 48 at ¶ 81; ECF No. 57 at ¶ 81; ECF No. 42 at ¶ 79; ECF No. 56 at ¶ 79.

[86] *See* ECF No. 45-46.

[87] *Id.*

[88] *Id.*

[89] *Id.*

11

Naser updated his injury evaluation on January 22, 2016.[90] Naser noted that Parisi's cognitive deficits had increased in severity since she initially filed her claim.[91]

Naser called Stoehr again on January 26, 2016.[92] Stoehr told Naser that Parisi scheduled follow-up appointments with her neurologist and concussion specialist.[93] Later that day, Naser updated the injury evaluation, noting that Parisi scheduled follow-up appointments for February 2016.[94] The following day, Naser updated the injury evaluation again, and wrote that "complaints and [treatment] continuing 1.5 years post-loss increase[s] pervious values."[95]

### 6. State Farm Retains Outside Counsel

Reed reviewed the updated injury evaluation and instructed Naser to retain outside counsel to assist the investigation and, specifically, to obtain a statement under oath and an independent medical examination.[96] State Farm had not previously asked Parisi to provide a statement under oath or submit to an independent medical examination.[97]

Naser testified that head injuries are particularly difficult to evaluate.[98] Naser explained that he has relatively little experience with claims for head injuries, and that it is

---

[90] *See* ECF No. 45-13.

[91] *See, generally, id.*

[92] ECF No. 42 at ¶ 89; ECF No. 56 at ¶ 87.

[93] ECF No. 42 at ¶ 88. The Court deems this fact as admitted. Contrary to Parisi's contention, this statement does not constitute hearsay because it is an admission of a party opponent. Therefore, the Court deems this fact as admitted for the reasons stated in footnotes 57 and 82, *supra*.

[94] ECF No. 45-14.

[95] ECF No. 45-15.

[96] ECF No. 42 at ¶ 90; ECF No. 56 at ¶ 90.

[97] ECF No. 48 at ¶ 94; ECF No. 57 at ¶ 94.

[98] *See* ECF No. 42-6 at 17, Deposition testimony of Edward Naser at p. 212.

12

difficult to determine recovery time for head injuries.[99] According to Naser, State Farm waited until this point in its investigation to schedule the statement under oath and independent medical examination because it wanted to have a better sense of how Parisi's injuries progressed.[100]

Naser called Stoehr on January 28, 2016 and told him that State Farm hired an outside law firm to obtain a statement under oath from Parisi.[101] Stoehr stated that he "might as well file suit."[102]

State Farm hired outside counsel Thomas McDonnell to handle Parisi's claim.[103] On February 5, 2016, McDonnell requested that Parisi provide a statement under oath.[104] Parisi agreed to provide a statement.[105] The parties scheduled the statement for February 25, 2016.[106] It took place as scheduled.[107]

On March 8, 2016, Stoehr notified Naser via letter that Parisi scheduled an appointment with a doctor at the UPMC Concussion Program for later that month.[108] Stoehr also renewed the $100,000 settlement demand.[109] Once again, Stoehr threatened litigation if State Farm did not offer to settle the case for the $100,000 limit.[110]

---

[99] *Id.*
[100] *See* ECF No. 57-6 at 51, Deposition testimony of Edward Naser at p. 198.
[101] ECF No. 42 at ¶ 94; ECF No. 56 at ¶ 94.
[102] ECF No. 42 at ¶ 96. The Court deems this fact as admitted. Contrary to Parisi's contention, this statement does not constitute hearsay because it is an admission of a party opponent. Therefore, the Court deems this fact as admitted for the reasons stated in footnotes 57, 82, and 93, *supra.*
[103] ECF No. 48 at ¶ 95; ECF No. 57 at ¶ 95.
[104] ECF No. 48 at ¶ 97; ECF No. 57 at ¶ 97.
[105] *Id.*
[106] ECF No. 48 at ¶ 100; ECF No. 57 at ¶ 100.
[107] ECF No. 42 at ¶ 102; ECF No. 56 at ¶ 102.
[108] ECF No. 45-52.
[109] *Id.*
[110] *Id.*

On March 24, 2016, State Farm claims representatives held a conference call with Attorney McDonnell and discussed Parisi's claim.[111] Naser increased the valuation of Parisi's claim two times that day.[112] After the second adjustment, State Farm valued the "low range" of Parisi's claim at $50,000 to $60,000 for past pain and suffering, $10,000 to $12,000 for future pain and suffering, and $1,800 to $8,000 for past medical bills.[113] Thus, according to State Farm's calculations, the minimum value of Parisi's claim was $61,800. State Farm valued the "high range" of Parisi's claim at $70,000 to $75,000 for past pain and suffering; $20,000 to $22,500 for future pain and suffering, and $1,800 to $10,000 for past medical bills.[114] Thus, the maximum value of Parisi's claim exceeded the $100,000 policy limit.[115]

State Farm updated Parisi's file again two days later. State Farm created a stacking claim as permitted by Parisi's policy.[116] Additionally, a notation was entered that stated "[l]ets move forward with a neuropsych IME to address cognitive/concussion related issues."[117] State Farm claims that Reed entered this message,[118] though the claims file does not identify a "performer" for this entry.[119]

---

[111] ECF No. 48 at ¶ 102; ECF No. 57 at ¶ 102.
[112] ECF No. 45-9 at 19-20.
[113] ECF No. 45-9 at 18-19.
[114] *Id.*
[115] The parties dispute whether these valuations took into account the $15,000 credit from the other motorist's liability insurance, and Parisi's wage loss and medical expenses.
[116] ECF No. 42 at ¶ 105; ECF No. 56 at ¶ 105.
[117] ECF No. 45-8 at 5.
[118] ECF No. 42 at ¶ 104.
[119] ECF No. 45-8 at 5.

### 7. Parisi Undergoes an Independent Medical Examination and State Farm Offers to Settle for the Policy Limit

On April 6, 2016, Attorney McDonnell contacted Stoehr to coordinate an independent medical examination.[120] On June 1, 2016, Naser wrote to Stoehr and advised him that McDonnel would contact him again to schedule Parisi's appointment.[121] On June 21, 2016, Stoehr received a letter from Prizm Medical Resources stating that Parisi's independent medical examination had been scheduled for July 27, 2016 in Mount Lebanon, Pennsylvania.[122]

Stoehr wrote Nasser on July 5, 2016.[123] Stoehr objected to the independent medical examination taking place in Mount Lebanon because Parisi would have trouble traveling there due to her cognitive difficulties.[124] Stoehr also wrote that he would sue State Farm for bad faith and breach of contract.[125]

Nasser responded to Stoehr's letter on July 7, 2016.[126] Naser informed Stoehr that he forwarded Stoehr's letter to McDonnell and stated that State Farm would reimburse Parisi's wages and transportation costs associated with participating in the independent medical examination.[127]

---

[120] ECF No. 42 at ¶ 106; ECF No. 56 at ¶ 106.
[121] ECF No. 45-47.
[122] ECF No. 45-48.
[123] ECF No. 45-57.
[124] *Id.*
[125] *Id.*
[126] ECF No. 57-4 at 31.
[127] *Id.*

McDonnell responded to Stoehr's letter on July 13, 2016.[128] McDonnell stated that he would consider scheduling the independent medical examination closer to Parisi's residence and requested that Stoehr identify other neuropsychologists who Parisi would prefer.[129] In late July, Stoehr proposed that Dr. Wayne D'Agaro, a psychologist in Altoona, Pennsylvania, conduct the independent medical examination.[130] McDonnell agreed with this proposal.[131]

Stoehr wrote to McDonnell on August 4, 2016 and provided McDonnell with a copy of the complaint he filed against State Farm before this Court.[132]

On August 10, 2016, Prizm contacted Stoehr and scheduled a neuropsychological examination with Dr. D'Agaro on September 26, 2016.[133] The examination took place as scheduled.[134]

Dr. D'Agaro completed a report on October 13, 2016.[135] Dr. D'Agaro diagnosed Parisi with mild neurocognitive disorder due to traumatic brain injury caused by the car accident.[136]

---

[128] ECF No. 57-4 at 20-21.

[129] *Id.*

[130] ECF No. 48 at ¶ 118; ECF No. 57 at ¶ 118.

[131] *Id.*

[132] ECF No. 48 at ¶ 119; ECF No. 57 at ¶ 119.

[133] ECF No. 48 at ¶ 120; ECF No. 57 at ¶ 120.

[134] ECF No. 42 at ¶ 115; ECF No. 56 at ¶ 115.

[135] ECF No. 42 at ¶ 116; ECF No. 56 at ¶ 116.

[136] ECF No. 45-64. Dr. D'Agaro also diagnosed Parisi with adjustment disorder with anxiety and generalized anxiety disorder. He stated that Parisi suffered from these disorders prior to the car accident, though he reported that the car accident made Parisi's anxiety worse. *Id.*

On November 2, 2016, State Farm offered Parisi a $100,000 settlement, the coverage limit of her policy.[137] Parisi accepted.

## B.    Procedural History

Parisi asserts three counts in her Amended Complaint: (1) contractual bad faith; (2) statutory bad faith under 42 Pa. C.S. § 8371; and (3) violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73. P.S. § 201-1. (ECF No. 8.)

Parisi moves for partial summary judgment on her bad faith claim. (ECF No. 38.) State Farm moves for summary judgment on all of Ms. Parisi's claims. (ECF No. 40.)

## IV.    Legal Standard

"Summary judgment is appropriate only where . . . there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d Cir. 2007)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those that will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248. The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d

---

[137] ECF No. 48 at ¶ 126; ECF No. 57 at ¶ 126.

17

575, 581 (3d Cir. 2009). "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n.11 (1986)). "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993); *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted).

## V.      Discussion: Bad Faith Claims

### A.      Contractual Bad Faith (Breach of Contract)

"To state a claim for breach of contract under Pennsylvania law, a plaintiff must plead the following elements: (1) the existence of a contract, including its essential terms; (2) the defendant's breach of duty imposed by the terms; and (3) actual loss or injury as a

direct result of the breach." *Angino v. Wells Fargo Bank, N.A.*, 666 F. App'x 204, 207 (3d Cir. 2016) (citing *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003)); *Haywood v. Univ. of Pittsburgh*, 976 F. Supp. 2d 606, 625 (W.D. Pa. 2013) (Conti, J.) (citing *Ware*). "In Pennsylvania, a duty of good faith and fair dealing is implicit in an insurance contract." *Rowe v. Nationwide Ins. Co.*, 6 F. Supp. 3d 621, 629 (W.D. Pa. 2014) (Gibson, J.) (quoting *Simmons v. Nationwide Mut. Fire Ins. Co.*, 788 F. Supp. 2d 404, 408 (W.D. Pa. 2011)).

"To prove a contractual bad faith claim, a plaintiff must show that the insurer's conduct was unreasonable or negligent." *Rowe*, 6 F. Supp. 3d at 629 (citing *CRS Auto Parts, Inc. v. Nat'l Grange Mut. Ins. Co.*, 645 F. Supp. 2d 354, 369 (E.D. Pa. 2009)). A plaintiff must establish an insurer's contractual bad faith by clear and convincing evidence. *Rowe*, 6 F. Supp. 3d at 629 (citing *Campbell v. State Farm Mut. Auto. Ins. Co.*, 617 F. Supp. 2d 378, 383 (W.D. Pa. 2008)).

"Generally, when an insurance company has paid the proceeds of an insurance policy, there can be no breach of contract claim because the insured has received what she was due under the policy and therefore has no damages." *Smith v. Allstate Ins. Co.*, 904 F. Supp. 2d 515, 521 (W.D. Pa. 2012) (Gibson, J.) (internal citations omitted.) But "[w]hen a party sues for damages stemming from an insurer's bad faith in handling a claim . . . the damages sought may be different from the damages compensated by payment pursuant to the insurance policy and therefore may not be remedied by such payment." *Id.* (citing *Birth Ctr. v. St. Paul Cos.*, 787 A.2d 376, 385 (2001)). Accordingly, "'where an insurer acts in bad faith, by unreasonably refusing to settle a claim, it breaches its contractual duty to act in good faith' and is liable for 'the known and/or foreseeable compensatory damages of its

19

insured that reasonably flow from the insurer's bad faith conduct.'" *Rowe*, 6 F. Supp. 3d at

629 (quoting *Birth*, 787 A.2d at 389).

## B. Statutory Bad Faith

Pennsylvania's bad faith statute provides that:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

42 Pa. C.S. § 8371.

To succeed on a statutory bad faith claim, "the insured must prove: (1) that the

insurer did not have a reasonable basis for denying benefits under the policy; and (2) that

the insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the

claim."[138] *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005) (citing *Keefe v.*

---

[138] As Judge Hornak stated, "[t]he first prong of the *Babayan* test is objective, 'so if a reasonable basis exists for an insurer's decision, even if the insurer did not rely on that reason, there cannot' as a matter of law be bad faith." *Hamm v. Allstate Prop. & Cas. Ins. Co.*, 908 F. Supp. 2d 656, 669 (W.D. Pa. 2012) (quoting *Wedemeyer v. U.S. Life Ins. Co. in City of New York*, No. 05–6263, 2007 WL 710290, at \*9 (E.D. Pa. Mar. 6, 2007)); *see Rowe*, 6 F. Supp. 3d at 630 (citing *Leach v. Nw. Mut. Ins. Co.*, No. 01–cv–2364, 2005 WL 3533116, at \*11 (W.D. Pa. Dec. 22, 2005)) (holding that "[t]o defeat a claim of bad faith, an insurer must only demonstrate that it had a reasonable basis for its decision."); *Hayden*, 2013 WL 5781121, at \*10 (W.D. Pa. Oct. 25, 2013) (quoting *Arnica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 179 (3d Cir. 2011)) (holding that "an insurer may defeat a claim of bad faith by showing that it had a reasonable basis for its actions.")

The second prong requires demonstrating that the "insurer knowingly or recklessly disregarded its lack of a reasonable basis for denying a claim." *Rancosky v. Washington Nat. Ins. Co.*, 2015 PA Super 264, 130 A.3d 79, 93 (2015) (citing *Greene v. United Servs. Auto. Ass'n*, 2007 PA Super 344, ¶ 19, 936 A.2d 1178, 1191 (2007)). "Indeed, 'the essence of a bad faith claim must be the unreasonable and intentional (or reckless) denial of benefits.'" *Hayden*, 2013 WL 5781121, at \*10 (quoting *UPMC Health Sys. v. Metropolitan Life Ins. Co.*, 391 F.3d 497, 506 (3d Cir. 2004)).

20

*Prudential Prop. & Cas. Ins. Co.*, 203 F.3d 218, 225 (3d Cir. 2000)); *U.S. Fire Ins. Co. v. Kelman Bottles*, 538 F. App'x 175, 182 (3d Cir. 2013) (quoting *Babayan*); *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 437 Pa. Super. 108, 125 (1994); *Rowe*, 6 F. Supp. 3d at 630; *Hayden v. Westfield Ins. Co.*, No. CIV.A. 12-0390, 2013 WL 5781121, at *10 (W.D. Pa. Oct. 25, 2013) (Hornak, J.); *Lewis v. Atl. States Ins. Co.*, No. 2:08-CV-01040-LPL, 2014 WL 12595309, at *7 (W.D. Pa. Sept. 26, 2014) (Lenihan, M.J.)

As this Court has previously noted, "Section 8371 encompasses a broad range of insurer conduct." *Smith*, 904 F. Supp. 2d at 524. Although Section 8371 does not define the term "bad faith," "courts have subsequently determined that a variety of carrier actions can constitute bad faith, including 'a frivolous or unfounded refusal to pay, lack of investigation into the facts, or a failure to communicate with the insured.'" *Hamm v. Allstate Prop. & Cas. Ins. Co.*, 908 F. Supp. 2d 656, 669 (W.D. Pa. 2012) (quoting *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n. 9 (3d Cir. 1999)). An insurer's delay in processing a claim can also constitute bad faith. *See, e.g., Mirarchi v. Seneca Specialty Ins. Co.*, 564 F. App'x 652, 655 (3d Cir. 2014).

State Farm ultimately paid Parisi the maximum benefit permitted under her policy. Accordingly, Parisi alleges that State Farm acted in bad faith by delaying payment of her claim—not by denying payment outright. To prevail on her "bad faith delay" claim, Parisi must prove that State Farm (1) "had no reasonable basis for causing the delay" and (2) "knew or recklessly disregarded the lack of a reasonable basis for the delay." *Mirarchi*, 564

F. App'x at 655–56 (citing *Thomer v. Allstate Ins. Co.*, 790 F. Supp. 2d 360, 369–70 (E.D. Pa. 2011)); *Sands v. State Farm Fire & Cas. Co.*, No. 5:17-CV-4160, 2018 WL 1693387, at *6 (E.D. Pa. Apr. 6, 2018) (citing *Mirarchi*); *see Ridolfi v. State Farm Mut. Auto. Ins. Co.*, 146 F. Supp. 3d 619, 623 (M.D. Pa. 2015) (citing *Wiener v. Banner Life Ins. Co.*, No. 2–1351, 2003 U.S. Dist. LEXIS 4957, at *19–20 (E.D. Pa. Feb. 28, 2003)); *Ressler v. Enter. Rent-A-Car Co.*, No. CIV.A. 06-562, 2007 WL 2071655, at *7 (W.D. Pa. July 13, 2007) (Ambrose, J.) (citing *Wiener*).

But "[a]n insurer's delay in settling a claim 'does not, on its own, necessarily constitute bad faith.'" *Great Lakes Reinsurance (UK) PLC v. Stephens Garden Creations, Inc.*, 119 F. Supp. 3d 297, 306 (E.D. Pa. 2015) (quoting *Kosierowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 583, 588 (E.D. Pa. 1999)). "A delay attributable to the uncertainty of the claim's value or the insurer's need to investigate further does not constitute bad faith." *Great Lakes*, 119 F. Supp. 3d at 306 (citing *Quaciari v. Allstate Ins. Co.*, 998 F. Supp. 578, 583 (E.D. Pa. 1998)). And "if delay is attributable to the need to investigate further or even to simple negligence, no bad faith has occurred." *Sands*, 2018 WL 1693387, at *6 (quoting *Williams v. Hartford Cas. Ins. Co.*, 83 F. Supp. 2d 567, 572 (E.D. Pa. 2000)).

Ms. Parisi further alleges that State Farm acted in bad faith by making a low-ball settlement offer. "Generally, Pennsylvania law does not treat as bad faith an insurer's low but reasonable estimate of an insured's losses." *Seto v. State Farm Ins. Co.*, 855 F. Supp. 2d 424, 430 (W.D. Pa. 2012) (citing *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 501 (Pa. Super. Ct. 2004)). But "low-ball offers which bear no reasonable relationship to an insured's actual losses can constitute bad faith within the meaning of § 8371." *Seto*, 855 F. Supp. 2d at 430 (citing *Brown*, 860 A.2d at 501); *Barry v. Ohio Cas. Grp.*, No. CIV.A.3:04 188, 2007 WL 128878,

22

at *8 (W.D. Pa. Jan. 12, 2007) (Gibson, J.); *Schifino v. Geico Gen. Ins. Co.*, No. 2:11-CV-1094, 2012 WL 6552839, at *2 (W.D. Pa. Dec. 14, 2012) (quoting *Barry*).

"The insured is required to meet its burden of proving 'bad faith' by clear and convincing evidence." *Babayan*, 430 F.3d at 137 (citing *Terletsky*, 649 A.2d at 688); *Henriquez-Disla v. Allstate Prop. & Cas. Ins. Co.*, No. CIV.A. 13-284, 2015 WL 539550, at *9 (E.D. Pa. Feb. 10, 2015). To satisfy this standard, "the plaintiff [must] show that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." *Hayden*, 2013 WL 5781121, at *11 (internal quotation marks omitted) (quoting *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004)). Accordingly, "the plaintiff's burden in opposing a summary judgment motion is commensurately high in light of the substantive evidentiary burden at trial." *Hayden*, 2013 WL 5781121, at *11 (internal quotation marks omitted) (quoting *Pilosi*, 393 F.3d at 367); *Swan Caterers, Inc. v. Nationwide Mut. Fire Ins. Co.*, No. 12-CV-00024, 2012 WL 5508371, at *6 (E.D. Pa. Nov. 13, 2012).

## C. The Court Will Deny Both Parties' Motions for Summary Judgment on Bad Faith

The Court finds that genuine issues of material fact exist that preclude the Court from entering summary judgment for either party on bad faith.

### 1. The Court Will Deny Parisi's Partial Motion for Summary Judgment Because State Farm Presented Sufficient Evidence for a Reasonable Jury to Conclude that it Did Not Act in Bad Faith

Parisi argues that this Court should grant summary judgment in her favor because State Farm failed to conduct a prompt and thorough investigation and engaged in low-ball

23

settlement tactics. (*See* ECF No. 47 at 6, 25.) The Court rejects these arguments. As explained below, a reasonable jury could determine that State Farm appropriately handled Parisi's claim.

### i. A Reasonable Jury Could Find that the Delay Was Reasonable

Parisi correctly notes that a significant period of time—approximately two-and-a-half years—elapsed between Parisi's filing her claim on May 23, 2014 and State Farm's offer to settle for the policy limit on November 2, 2016. But Stoehr told State Farm that he usually did not work with claims representatives until he settled the underlying claim with the other driver.[139] Stoehr did not settle the underlying claim until March 19, 2015.[140] And even after he settled the underlying claim, Stoehr did not indicate any desire to expeditiously settle Parisi's claim with State Farm. In fact, in letters dated November 19, 2015 and December 30, 2015, Stoehr explicitly stated that he would make a settlement demand at a *future* date.[141] In fact, it appears that Stoehr first demanded settlement during a phone conversation on January 5, 2016,[142] and did not make a written demand for settlement until January 13, 2016.[143]

Once Stoehr made formal demands for settlement, State Farm acted to promptly resolve Parisi's claim. In late January, State Farm hired McDonnell to conduct a statement under oath.[144] McDonnell took Parisi's statement under oath on February 25, 2016[145]—six

---

[139] ECF No. 48 at ¶ 30; ECF No. 57 at ¶ 30.
[140] ECF No. 42-4 at 13.
[141] *See* ECF No. 45-41 at 5 and ECF No. 45-43, respectively.
[142] *See* ECF No. 42 at ¶ 77.
[143] *See* ECF No. 45-46.
[144] ECF No. 42 at ¶ 90; ECF No. 56 at ¶ 90.
[145] ECF No. 42 at ¶ 102; ECF No. 56 at ¶ 102.

weeks after Stoehr made his written settlement demand. In March, State Farm held a conference call with McDonnell to discuss Parisi's statement under oath and decided to schedule an independent medical examination.[146] In early June, State Farm informed Stoehr that it scheduled the independent medical examination for July.[147] Importantly, State Farm scheduled the independent medical examination *before* Parisi filed suit.[148] And while State Farm rescheduled the independent medical examination, it did so because Stoehr objected to its taking place in Mount Lebanon.[149] Finally, State Farm settled Parisi's claim approximately three weeks after it received the report from the independent medical examination.[150]

Based on these undisputed facts, a reasonable jury could easily find that State Farm did not unreasonably delay in processing Parisi's claim.

### ii. A Reasonable Jury Could Find that State Farm's Settlement Tactics Did Not Constitute Bad Faith

Parisi argues that State Farm acted in bad faith by extending an unreasonably low settlement offer of $17,000 in January 2016.[151] But a reasonable jury could find that State Farm made a reasonable offer. Parisi does not contend that the offer failed to compensate her for all of the expenses that she incurred because of the accident—in fact, Parisi admits that as of late 2015, she suffered only $12,000 in "special damages," i.e. excess lost wages

---

[146] ECF No. 48 at ¶ 102; ECF No. 57 at ¶ 102.
[147] ECF No. 45-48.
[148] ECF No. 48 at ¶ 119; ECF No. 57 at ¶ 119.
[149] ECF No. 45-57,
[150] ECF No. 48 at ¶ 126; ECF No. 57 at ¶ 126.
[151] ECF No. 47 at 25.

25

and out-of-pocket medical expenses.[152] Parisi provided State Farm with documentation of these expenses and State Farm's settlement offer more than fully compensated Parisi for these confirmed losses.

Parisi objects to the fact that State Farm's $17,000 settlement offer placed a low value on Parisi's pain and suffering—ostensibly $5,000 given that she had $12,000 in documented out-of-pocket expenses. Parisi contends that her claims file contained sufficient information to conclusively determine that her claim would exceed the $100,000 policy limit. But Parisi's first-party file exclusively contained doctors' reports authored in the first month after her injury.[153] And Dr. Arbitell—the neuropsychologist obtained by Parisi—wrote his report in May 2015[154]—eight months before State Farm offered to settle. Naser testified that head injuries are particularly difficult to evaluate and that it is especially difficult to judge recovery time.[155] A jury could find that State Farm made a reasonable settlement offer of $17,000 because it lacked sufficient information to corroborate Parisi's contention that she suffered significant cognitive impairments, particularly because several of the doctors' reports upon which Parisi relies were authored long before Stoehr made his settlement demand. Furthermore, a jury could conclude that State Farm needed more information about the extent of her non-economic losses, and that State Farm promptly offered Parisi the policy limit once it corroborated her claims of cognitive impairment through a statement under oath and an independent medical evaluation.

---

[152] ECF No. 48 at ¶ 57.

[153] ECF No. 48 at ¶ 28.

[154] ECF No. 48 at ¶¶ 54-57; ECF No. 57 at ¶¶ 54-57.

[155] ECF No. 42-6 at 17, Deposition testimony of Edward Naser at p. 212.

### iii. Conclusion: The Court Will Deny Parisi's Motion for Partial Summary Judgment on Bad Faith

For the reasons stated above, the Court finds that a reasonable jury could conclude that State Farm did not act in bad faith. Therefore, the Court will deny Parisi's motion for summary judgment.[156]

### 2. The Court Will Deny State Farm's Motion for Summary Judgment on Bad Faith Because Parisi Presented Sufficient Evidence for a Reasonable Jury to Find that State Farm Acted in Bad Faith

This is a close call. But when viewing the evidence in the light most favorable to Parisi, the Court concludes that a reasonable jury could find that State Farm unreasonably delayed settling Parisi's claim and/or made an unreasonably low-ball settlement offer with reckless disregard to the fact that it acted unreasonably. Therefore, the Court will deny State Farm's motion for summary judgment on bad faith.

### i. A Reasonable Jury Could Find that State Farm Unreasonably Delayed Handling Parisi's Claim and Consciously Disregarded Its Unreasonable Delay

In the summer of 2014, Whiteside reviewed the extensive medical records in Parisi's first-party claims file, records that unambiguously indicated that Parisi suffered a serious

---

[156] The cases Parisi cites to support her motion for summary judgment fail to persuade the Court. Both of the cases that Parisi relies on to argue that State Farm's delay constituted bad faith do not apply because, in those cases, the district courts found that the insurance companies acted in bad faith following bench trials—not at the summary judgment stage. *See Hollock v. Erie Ins. Exch.*, 54 Pa. D. & C.4th 449, 450 (Com. Pl. 2002); *Bonenberger v. Nationwide Mut. Ins. Co.*, 2002 PA Super 14, ¶ 3, 791 A.2d 378, 379 (2002). The cases Parisi cites to support her argument that State Farm's settlement offer demonstrated bad faith similarly do not persuade the Court because they did not result in summary judgments in favor of the insured. *See Collins v. Allstate Ins. Co.*, No. CIV. A. 95-592, 1997 WL 700495, at *1 (E.D. Pa. Oct. 31, 1997) (finding for insured after bench trial); *Barry*, 2007 WL 128878 (denying both parties' motions for summary judgment).

head injury.[157] In fact, one of these reports revealed that Parisi had been diagnosed with "post-concussion syndrome" and experienced considerable deficits in memory and attention.[158] Despite receiving these records in mid-2014, State Farm did not complete an injury evaluation for Parisi's claim until March 2015[159] and did not place a valuation on her claim until April 2015[160]—nearly eleven months after she filed her claim.

When Whiteside finally completed his injury evaluation, he concluded that the automobile accident caused Parisi's injuries and observed that Parisi's medical treatment appeared "reasonable and necessary."[161] But despite acknowledging causation and liability, State Farm did not offer to settle Parisi's claim. In fact, it appears that State Farm took little— if any—action on Parisi's claim for the next six months.[162] And State Farm did not request a statement under oath or an independent medical examination until early 2016—over a year-and-a-half after Parisi filed her claim.

True, State Farm began actively attempting to resolve Parisi's claim once Stoehr made a formal settlement demand in January 2016. But in the eighteen months between when Parisi filed her claim and when Stoehr demanded settlement, State Farm failed to

---

[157] ECF No. 45-28; ECF No. 45-29; ECF No. 45-30.

[158] *See* ECF No. 45-28.

[159] ECF No. 45-11 at 4.

[160] ECF No. 48 at ¶ 41; ECF No. 57 at ¶ 41.

[161] ECF No. 45-11 at 4-6.

[162] State Farm only made two entries in Parisi's claims file between April and November 2015, and one of them simply noted that someone from Allegheny Pain Management contacted State Farm. *See* ECF No. 45-8 at 12-13.

conduct a meaningful investigation, and made no attempts to settle. Based on these facts, a jury could conclude that State Farm acted in bad faith.[163]

## ii.   A Reasonable Jury Could Find that State Farm Acted in Bad Faith By Offering a Low-Ball Settlement

State Farm only offered to settle Parisi's claim once during the two-and-a-half years between when she submitted her claim and when she completed an independent medical examination. Naser offered to settle Parisi's claim for $17,000 in January 2016.[164] As explained below, a reasonable jury could conclude that State Farm acted in bad faith by extending a low-ball settlement offer.

Naser completed an injury evaluation in December 2015 that valued Parisi's claim between $46,800 and $61,800.[165] And this figure likely represented an artificially low value because it failed to account for Parisi's future pain and suffering.[166] State Farm claims that these figures did not account for the $15,000 offset from the other driver's insurance. Even accepting this as true—and even if the value of Parisi's future pain and suffering truly equaled $0, as State Farm apparently assumed by failing to incorporate any damages for

---

[163] The cases State Farm cites to argue that its delay did not constitute bad faith are inapposite. For example, in granting summary judgment for the insurer in *Thomer v. Allstate Ins. Co.*, 790 F. Supp. 2d 360 (E.D. Pa. 2011), the Court found that "much of the delay was directly caused by [the plaintiff] or her counsel." *Id.* at 370. As described above, a reasonable jury could find that State Farm caused most of the extended delay in this case. The Court is similarly unpersuaded by *Richardson v. United Fin. Cas. Co.*, No. CIV.A. 11-7688, 2013 WL 2357519 (E.D. Pa. May 30, 2013)—the plaintiff's attorney in that case failed to promptly provide complete medical records to the insurance company—and *Rowe*, 6 F. Supp. 3d 621—where the insured failed to submit medical records despite the insurance company's "numerous requests" to do so. Stoehr regularly supplied State Farm with medical records soon after they became available and State Farm possessed robust records from Parisi's first-party claims file from the beginning.

[164] ECF No. 42 at ¶ 76; ECF No. 56 at ¶ 76.

[165] ECF No. 48 at ¶ 60; ECF No. 57 at ¶ 60.

[166] ECF No. 48 at ¶ 72; ECF No. 57 at ¶ 72.

29

future pain and suffering into the injury evaluation—the low range of State Farm's liability would still have been $31,800. But Reed only extended Naser settlement authority up to $26,800.[167] State Farm has not offered any explanation for why Reed only authorized Naser to settle for $26,800 when, just nine days before, Naser had evaluated Parisi's claim as being worth a minimum of $31,800. And, despite having settlement authority up to $26,800, Naser offered Parisi a paltry $17,000—$14,800 *less than the lowest amount* that State Farm thought Parisi's claim was worth. A reasonable jury could find that State Farm acted in bad faith by placing an arbitrary value on Parisi's claim and offering a low-ball settlement that did not reflect a reasonable estimation of her true damages.

State Farm argues that its settlement offer could not have constituted bad faith because it fell within State Farm's estimated range of value.[168] If courts accepted this principle, they would incentivize insurers to artificially reduce the low end of their range of claim values because, by doing so, insurers could categorically insulate themselves from liability for bad faith. In the legal paradigm envisioned by State Farm, a rational insurer would place a $10,000 to $80,000 value on a claim that it knew was worth a minimum of $50,000 so that it could make a low-ball settlement offer of $15,000 and avoid being found liable for bad faith. The Court declines State Farm's invitation to announce a rule that would incentivize insurers to manipulate their valuations and make unreasonably low settlement offers.

---

[167] ECF No. 48 at ¶ 74; ECF No. 57 at ¶ 74.
[168] *See* ECF No. 41 at 18.

### iii. Conclusion: The Court Will Deny State Farm's Motion to Dismiss Parisi's Bad Faith Claims

For the reasons articulated above, a reasonable jury could find that State Farm acted in bad faith by delaying its investigation into Parisi's claim and by making a low-ball settlement offer. Therefore, the Court will deny State Farm's motion to dismiss Parisi's bad faith claims.

## VI.    Unfair Trade Practices and Consumer Protection Law

State Farm argues that the Court should dismiss Parisi's UTPCPL claim because Parisi failed to demonstrate that she justifiably relied on any deceptive trade practice and because the UTPCPL does not provide a remedy for misconduct during the claims handling process.[169] In response, Parisi contends that she justifiably relied on State Farm's specious promise to treat her like a "good neighbor" when purchasing her policy.[170] But Parisi fails to identify any evidence in the record that State Farm's "good neighbor" marketing campaign induced her to purchase insurance from State Farm.

The UTPCPL prohibits unfair and deceptive trade practices. *See* 73 P.S. § 201-2(4). "To establish liability under the UTPCPL's catchall provision a plaintiff must present evidence showing: (1) a deceptive act that is likely to deceive a consumer acting reasonably under similar circumstances; (2) justifiable reliance; and (3) that the plaintiff's justifiable reliance caused ascertainable loss." *Slapikas v. First Am. Title Ins. Co.,* 298 F.R.D. 285, 292

---

[169] ECF No. 41 at 21-25.
[170] ECF No. 55 at 28-29.

(W.D. Pa. 2014) (Conti, J.) (citing *Seldon v. Home Loan Servs.*, 647 F. Supp. 2d 451, 470 (E.D. Pa. 2009).

"[A]llegations of misconduct in the claims handling process are not actionable under the UTPCPL." *Mondron v. State Farm Mut. Auto. Ins. Co.*, No. CV 16-412, 2016 WL 7384183, at *5 (W.D. Pa. Dec. 21, 2016) (Bissoon, J.) (quoting *Doherty v. Allstate Indem. Co.*, No. CV 15-05165, 2016 WL 5390638, at *8 (E.D. Pa. Sept. 27, 2016)); *Gibson v. Progressive Specialty Ins. Co.*, No. CIV.A. 15-1038, 2015 WL 2337294, at *4 (E.D. Pa. May 13, 2015) (citing *Nordi v. Keystone Health Plan W. Inc.*, 989 A.2d 376, 385 (Pa. Super. 2010)); *Kelly v. Progressive Advanced Ins. Co.*, 159 F. Supp. 3d 562, 565 (E.D. Pa. 2016).

The Court will grant State Farm's motion for summary judgment on Parisi's UTPCPL claim. Parisi failed to present any evidence whatsoever to support her assertion that she relied on State Farm's "good neighbor" campaign when deciding whether to purchase State Farm insurance. Furthermore, the evidence that Parisi presented exclusively pertains to State Farm's handling of her claim. The UTPCPL does not afford a cause of action to redress misconduct committed during the claims handling process. *See, e.g.*, *Mondron*, 2016 WL 7384183. Therefore, the Court will dismiss Parisi's UTPCPL claim.

## VII. Conclusion

For the reasons articulated above, the Court **DENIES** Parisi's Partial Motion for Summary Judgment on Bad Faith. The Court **GRANTS in PART, and DENIES in PART,** State Farm's Motion for Summary Judgment—the Court **DENIES** State Farm's Motion with respect to bad faith, but **GRANTS** it with respect to the UTPCPL claim.

An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MELISSA C. PARISI and **MICHAEL** | ) | **CIVIL ACTION NO. 3:16-179** |
| C. PARISI, III, wife and husband, | ) | |
| | ) | **JUDGE KIM R. GIBSON** |
| **Plaintiffs,** | ) | |
| v. | ) | |
| | ) | |
| **STATE FARM MUTUAL** | ) | |
| **AUTOMOBILE INSURANCE** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

**AND NOW**, this ___7th___ day of May, 2018, upon consideration of Parisi's Motion for Partial Summary Judgment on Bad Faith (ECF No. 38) and State Farm's Motion for Summary Judgment (ECF No. 40), and in accordance with the attached memorandum opinion, **IT IS HEREBY ORDERED** as follows:

1. The Court **DENIES** Parisi's Motion for Partial Summary Judgment on Bad Faith (ECF No. 38).

2. The Court **GRANTS in PART, and DENIES in PART,** State Farm's Motion for Summary Judgment (ECF No. 40). The Court **DENIES** the motion with respect to bad faith. The Court **GRANTS** the motion with respect to the UTPCPL claim.

**BY THE COURT:**

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**